[No. A077653. First Dist., Div. Four. Nov. 7, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
ALBERTO GARCIA TORRES, Defendant and Appellant.

COUNSEL

Christine Dubois, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Martin S. Kaye and Ronald S. Matthias, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

POCHÉ, Acting P. J.—In this case we conclude that a law enforcement entity that spends money to purchase illegal drugs does not thereby become a "direct victim of a crime" entitling it to receive direct restitution reimbursing it for the cash it spent on the drugs. Defendant Alberto Garcia Torres appeals from a judgment of conviction entered upon his guilty pleas to four counts of selling methamphetamine (Health & Saf. Code, § 11379, subd. (a)). On appeal defendant challenges that portion of his restitution order that requires him to repay $1,425, or the amount paid to him by the undercover sheriff's deputies in the course of three of the four drug sales.

After receiving a tip from an informant, undercover sheriff's deputies paged defendant and arranged to purchase from him a half-ounce of methamphetamine for $350 on October 22, 1996. They made a second half-ounce buy for $375 on October 31. On November 8 they bought one ounce for $700 and negotiated a larger purchase. A final buy of five ounces on November 15 concluded with defendant's arrest.

At sentencing on January 23, 1997, the trial court imposed a minimum restitution fine of $200 and direct restitution of $1,425 "to the victim, which would be the police agency involved in the transactions."

*Discussion*

On appeal defendant contends that the county agency that funded the drug buys is not a "direct victim" of a crime within the meaning of Penal Code section 1202.4.[1] It is uncontested that the county or its sheriff's department are entities described by the section to which restitution is

---

[1]The version of that section in effect at the time of defendant's crime and of his sentencing was that as amended by the Legislature in 1995.

The pertinent portions of Penal Code section 1202.4 then provided: "(a)(1) It is the intent of the Legislature that a victim of crime who incurs any economic loss as a result of the

properly ordered. Moreover, a defrauded government agency can be a victim entitled to restitution. (*People* v. *Crow* (1993) 6 Cal.4th 952, 960 [26 Cal.Rptr.2d 1, 864 P.2d 80] [county department of social services was a victim of welfare fraud and entitled to restitution under Government Code former section 13967, subdivision (c)]; see also *People* v. *Baker* (1974) 39 Cal.App.3d 550, 559 [113 Cal.Rptr. 248] [dicta stating government would be entitled to "reparation" as a victim of crime under former Penal Code section 1203.1 when the crime was tax evasion or theft of government property].) The rationale for that ruling—that the agency no less than a natural person can be a victim of fraud—is, however, inapplicable here. (*People* v. *Crow, supra,* 6 Cal.4th at p. 957.) The sheriff's deputies bought and apparently received what they paid $1,425 for, methamphetamine.[2]

The People point to the fact that the county is out-of-pocket $1,425 it paid for the drug. It has, they argue, clearly suffered some "economic loss." (Pen. Code, § 1202.4, subd. (a)(1).) Defendant concedes the economic loss, but argues in reliance upon two cases that restitution to a law enforcement agency for what is in effect a cost of its doing its job is not an economic loss that makes the agency a "direct victim" of the crime it is investigating. In support of his position defendant notes that a defendant could not be required to make restitution to the county for the costs of his extradition because extradition expense is a general cost of prosecuting and rehabilitating criminals. (*People* v. *Burnett* (1978) 86 Cal.App.3d 320, 323 [150 Cal.Rptr. 126].) Under a similar rationale $90,000 to the county and the state as restitution for their costs of prosecuting defendant could not be awarded to those government entities as crime victims (under former Pen. Code § 1203.1). (*People* v. *Baker, supra,* 39 Cal.App.3d at pp. 559-560.)

commission of a crime shall receive restitution directly from any defendant convicted of that crime. . . .
"...... . . . . . . . . . . . . . . . . . . . .
"(f) In every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims. . . .
"(g) Restitution ordered pursuant to subdivision (f) shall be imposed in the amount of the losses, as determined. . . . Restitution shall, to the extent possible, be of a dollar amount that is sufficient to fully reimburse the victim or victims, for every determined economic loss incurred as the result of the defendant's criminal conduct, including all of the following: [¶] (1) Full or partial payment for the value of stolen or damaged property. . . . [¶] (2) Medical expenses. [¶] (3) Wages or profits lost due to injury incurred by the victim . . . .
"...... . . . . . . . . . . . . . . . . . . . .
"(p) Nothing in this section shall prevent a court from ordering restitution to any corporation, business trust, estate, trust, partnership, association, joint venture, government, governmental subdivision, agency, or instrumentality, or any other legal or commercial entity when that entity is a direct victim of a crime." (Pen. Code, former § 1202.4, as amended by Stats. 1995, ch. 313, § 5.)
[2]At the hearing at which defendant entered his guilty pleas the court was informed by the district attorney that "[a] hundred and forty [grams of methamphetamine] was tested by DOJ."

While these earlier cases make a fairly obvious distinction between the costs attendant upon enforcing the criminal law and restitution to victims of crime, because they were not construing Penal Code section 1202.4 they are not necessarily dispositive of whether the sheriff's office was a "direct victim" under that statute. That question is answered, we believe, by the words of the section itself.

Throughout the section, "restitution" is described as being available to a victim or victims with the term "victim" defined expansively to include "the immediate surviving family of the actual victim." (Former Pen. Code, § 1202.4, subds. (a)(1), (f), & (k).) It is only in the subsection permitting restitution to nonnatural persons that the language "direct victim" appears. (Former Pen. Code, § 1202.4, subd. (p).)

Before its first appearance in the statutory scheme, however, the term "direct victim" appeared in a case involving a restitution order to a government entity. (*People* v. *Beck* (1993) 17 Cal.App.4th 209, 221 [21 Cal.Rptr.2d 250].) *Beck* involved a defendant who pled no contest to eight counts of grand theft and one count of tax evasion; defendant's sentence required him to pay direct restitution to the citizen victims and direct restitution of unpaid taxes (charged in a dismissed count) to the California State Franchise Tax Board. (*Id.* at p. 212.) On appeal defendant argued that the tax board was not a victim for the purposes of restitution under former Government Code section 13967, subdivision (c). The Court of Appeal rejected his view. Concluding that since the Legislature had expanded the definition of victim contained in Government Code section 13960 to include for restitution purposes family members and dependents "whose loss is only indirect in that such persons did not sustain the injury . . . we fail to see how the Legislature could have meant to exclude *direct victims* of crimes themselves, just because they are artificial persons." (*People* v. *Beck, supra,* at p. 221; italics added.) The court in *Beck* specifically cited *Baker, Burnett* and *People* v. *Narron* (1987) 192 Cal.App.3d 724 [237 Cal.Rptr. 693]. (*Ibid.*)

*Beck* was decided in July 1993. The provision permitting a nonnatural entity to receive restitution when the "entity is a direct victim" was added as part of legislation which took effect September 29, 1994. (Pen. Code, former § 1202.4, subd. (p), added by Stats. 1994, ch. 1106, § 3.)

Reading the statutory language in light of the cases described above in which restitutionary orders have been permitted only when the government agency is itself victimized we conclude the Legislature did not intend to include as a "direct victim of a crime" a law enforcement agency that in the

course of investigating criminal activity purchases illegal drugs. Therefore such an agency is not entitled to restitution for moneys spent for such drug buys under former Penal Code section 1202.4, subdivision (p).[3]

### Disposition

The judgment is modified to delete line 17 under section F providing for "Restitution $1,425 at jointly and severally ea. month to the Prob. Dept. as directed." As modified the judgment is affirmed. The Clerk of the Sonoma County Superior Court is directed to prepare an amended abstract of judgment reflecting that modification and to forward a certified copy of the amended abstract to the Department of Corrections.

Reardon, J., and Hanlon, J., concurred.

---

[3]Penal Code section 1202.4, subdivision (k) currently provides: "For purposes of this section, 'victim' shall include the immediate surviving family of the actual victim. 'Victim' shall also include any corporation, business trust, estate, trust, partnership, association, joint venture, government, governmental subdivision, agency, or instrumentality, or any other legal or commercial entity when that entity is a direct victim of a crime." (Amended by Stats. 1996, ch. 629, § 3.)