[No. E048797. Fourth Dist., Div. Two. Oct. 12, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
MICAH AKEEM KELLY, Defendant and Appellant.

[No. E049337. Fourth Dist., Div. Two. Oct. 12, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT TRONGALE, Defendant and Appellant.

**COUNSEL**

John L. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant Micah Akeem Kelly.

Stephen S. Buckley, under appointment by the Court of Appeal, for Defendant and Appellant Robert Trongale.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Eric Swenson, Theodore M. Cropley, James D. Dutton and Michael T. Murphy, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**RICHLI, J.—**

## I

## INTRODUCTION[1]

Can the Recording Industry Association of America (RIAA), a trade association whose members are part of the music industry, obtain restitution for piracy from criminal defendants? We hold that RIAA was not a direct victim of defendants' crimes and reverse the restitution orders made by the trial court. In doing so, we distinguish *People v. Ortiz* (1997) 53 Cal.App.4th 791, 795–797 [62 Cal.Rptr.2d 66] and consider the effect of an amended statute, section 1202.4, former subdivision (r), effective January 1, 2009.

Defendant Micah Akeem Kelly (Kelly) pleaded nolo contendere and defendant Robert Trongale (Trongale)[2] pleaded guilty to criminal offenses for involving counterfeit compact discs. (§§ 350, subd. (a)(2), 653w, subd. (a).) As part of defendants' sentences, the court ordered them to pay $14,606.66 in restitution to RIAA. Defendants urge us to find the lower court abused its discretion by ordering restitution because RIAA was not a direct victim suffering an economic loss.

The appeals are authorized under section 1237, subdivisions (a) and (b), and California Rules of Court, rule 8.304(b)(4)(B).

## II

## FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts are recited in an earlier opinion of this court. Kelly worked in a barber shop with Trongale. Trongale admitted storing 1,927 counterfeit compact discs at the barber shop. In March 2006 as a favor to Trongale, Kelly sold five counterfeit compact discs for $20 to an undercover police officer posing as a customer. Kelly admitted having sold a total of 11 compact discs. (*People v. Kelly* (Mar. 24, 2008, E043200) [nonpub. opn.].)

---

[1] All statutory references are to the Penal Code.

[2] Their two appeals have been consolidated on appeal.

In earlier proceedings, a jury convicted Kelly of one count of violating section 653w, subdivision (a), California's criminal antipiracy statute. This court reversed the judgment for instructional error. (*People v. Kelly, supra,* E043200.)

Meanwhile, Trongale pleaded guilty in March 2007 to one count of violating section 350, subdivision (a)(2), counterfeit of a registered mark. As part of his sentence, in April 2007, he was ordered to pay $2,213 in victim restitution to RIAA, the amount originally requested by RIAA.

After the reversal of Kelly's conviction, in January 2009, he entered a plea of nolo contendere to violating section 653w, subdivision (a), and was sentenced to a two-year term, which had already been served.

At Kelly's restitution hearing in June 2009, the RIAA submitted a letter seeking restitution. The RIAA identified itself as a nonprofit trade association that represents the United States recording industry. RIAA's primary function "is to investigate the illegal production and distribution of sound recordings . . . . When restitution is ordered, the RIAA receives the payments on behalf of its members pursuant to their authorization." The RIAA calculated a wholesale value of $7.58 for each of the 1,927 compact discs found in the barber shop. Based on RIAA's letter, the court ordered Kelly to pay a restitution fine of $14,606.66 to RIAA.[3]

In September 2009, the court then modified Trongale's restitution order to provide that he and Kelly, jointly and severally, be ordered to pay the $14,606.66, rather than the original sum of $2,213.

## III

## ANALYSIS

■ We review the trial court's restitution order for an abuse of discretion: "A trial court's determination of the amount of restitution is reversible only if the appellant demonstrates a clear abuse of discretion." (*People v. Akins* (2005) 128 Cal.App.4th 1376, 1382 [27 Cal.Rptr.3d 815]; see *People v. Chappelone* (2010) 183 Cal.App.4th 1159, 1172–1173 [107 Cal.Rptr.3d 895]; *People v. Thygesen* (1999) 69 Cal.App.4th 988, 992 [81 Cal.Rptr.2d 886].) The trial court must "use a rational method that could reasonably be said to

---

[3] RIAA also asked for investigative costs of $975.53, which were not awarded.

make the victim whole, and may not make an order which is arbitrary or capricious." (*Thygesen*, at p. 992; see also *In re Brian S.* (1982) 130 Cal.App.3d 523 [181 Cal.Rptr. 778].) "No abuse of discretion is shown simply because the order does not reflect the exact amount of the loss . . . . [Citation.]" (*Akins*, at p. 1382.) But a restitution order is intended to compensate actual loss and is not intended to provide a windfall. (*Chappelone*, at p. 1172.)

We will affirm the lower court's determination of restitution provided we find a factual or rational basis for the amount ordered. (*People v. Dalvito* (1997) 56 Cal.App.4th 557, 562 [65 Cal.Rptr.2d 679].) An abuse of discretion occurs when the court applies the wrong legal standard. (*Choice-in-Education League v. Los Angeles Unified School Dist.* (1993) 17 Cal.App.4th 415, 422 [21 Cal.Rptr.2d 303]; *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 85 [87 Cal.Rptr.2d 754].)

The restitution statute provides in pertinent part: "(k) For purposes of this section, 'victim' shall include all of the following: [¶] . . . [¶] (2) Any corporation, business trust, estate, trust, partnership, association, joint venture, government, governmental subdivision, agency, or instrumentality, or any other legal or commercial entity when that entity is a direct victim of a crime." (§ 1202.4.) There are two issues to be decided. Is RIAA a "victim" entitled to restitution? If so, was restitution properly calculated by the trial court? We decide only the threshold issue of whether RIAA is a direct victim.

Kelly argues that a trade association, like the RIAA, is not the "direct victim" and that the sale of counterfeit compact discs did not cause actual lost profits to the victim record companies or recording artists. In *People v. Ortiz, supra*, 53 Cal.App.4th 791, California treated a trade organization like RIAA as a direct victim. Cases from New York, Florida, and Washington have decided RIAA is not a victim under similar circumstances. (*People v. Colon* (N.Y.Sup.Ct. 2005) 8 Misc.3d 569 [798 N.Y.S.2d 856]; *Albertie v. State* (Fla.Dist.Ct.App. 2008) 979 So.2d 1086; *State v. Awawdeh* (1994) 72 Wn.App. 373 [864 P.2d 965].) Meanwhile, other California cases concerning the "direct victim" issue may be considered by analogy to conclude that Ortiz was wrongly decided. (*People v. Martinez* (2005) 36 Cal.4th 384 [30 Cal.Rptr.3d 779, 115 P.3d 62]; *People v. Torres* (1997) 59 Cal.App.4th 1 [68 Cal.Rptr.2d 644]; *People v. Saint-Amans* (2005) 131 Cal.App.4th 1076 [32 Cal.Rptr.3d 518].)

The trial court based its restitution award on *Ortiz*, in which the defendant was convicted of possessing for sale approximately 53,000 counterfeit cassette tapes in violation of section 653w, subdivision (a). As a condition of probation, the lower court ordered the defendant to pay investigatory costs and $2,000 for estimated economic loss to the Association of Latin American Record Manufacturers, a nonprofit trade association representing various Latin-American music labels.

The *Ortiz* appellate court ruled that ". . . ALARM stands in the shoes of the direct victims as their designated representative in the United States to protect their interests with respect to the counterfeiting of their products. Section 1202.4, subdivision ([k]) explicitly recognizes an association can be a direct victim and we presume the Legislature knows an association is an organization of people or other entities joined for a common purpose. (See West's Legal Thesaurus/Dictionary (1985) p. 68.)" (*People v. Ortiz, supra*, 53 Cal.App.4th at p. 796.) Therefore, treating the trade association "as a direct victim is consistent with the language of the statute [(§ 1202.4)] and the clearly expressed public policy of this state," because, if the companies which are members of the trade association "combated piracy of their recordings individually instead of through a trade association, there can be no doubt the companies would be entitled to restitution as 'direct victims' . . . . We see no reason why these companies cannot form a nonprofit association to combat tape piracy and obtain restitution on their behalf." (*Ibid.*) *Ortiz* particularly noted that "where there are numerous victims of the defendant's criminal activity and those victims are foreign residents, it may be impracticable if not impossible for each of them, individually, to discover and seek restitution for crimes involving their property interests in California." (*Id.* at p. 797.) *Ortiz* also recognized the rehabilitative value of restitution. (*Id.* at p. 796.)

In contrast, in other state cases involving piracy prosecutions, courts have decided RIAA cannot obtain restitution under statutory schemes similar to California's. In *State v. Awawdeh, supra*, 864 P.2d at page 969, the court observed: "RIAA is a nonprofit trade association. Record companies and musicians may have lost profits as a result of Mr. Awawdeh's activities, but RIAA has not. Therefore, RIAA and the sheriff's office are not victims . . . ." The New York court also addressed the issue, holding RIAA is not the proper party to recover restitution: ". . . RIAA's position that the court award *it* restitution on behalf of its members is not supportable[;] . . . restitution goes to 'victims,' and not their trade associations. While the RIAA could be helpful to its members in future cases by compiling information as to the specific infringements of their individual copyrights by reason of the piracy so that the copyright holders can receive such restitution, RIAA, no matter how it identifies with its members, is not the party whose property was taken." (*People v. Colon, supra*, 798 N.Y.S.2d at p. 865.)

Florida adopted *Awawdeh*'s and *Colon*'s reasoning: "[T]he RIAA does not qualify as a 'victim,' which may be the subject of a restitution order under our statutes. [Citation.] [Fns. omitted.] This, in turn, is the case because the RIAA neither itself suffered a 'loss' from the forgery of its members' compact disks, nor falls within the 'conduit' exception to the rule requiring such a loss . . . . The exception applies when a collection agency merely passes along the sums received to the 'real' victims. In this case, however, the RIAA does not remit any restitution received to the entity which made the recording, but rather in effect treats any restitution payments as general income, deducting them from the 'dues' payments it requires from all of its members. Thus, the RIAA falls directly within the category of affected, but non-victim, third parties to which restitution may not be awarded. [Citations.]" (*Albertie v. State, supra*, 979 So.2d at p. 1087.)

Other California cases have decided there is no direct victim in the following instances. The California Supreme Court in *People v. Martinez, supra*, 36 Cal.4th at pages 392–394, held the Department of Toxic Substances Control was not a direct victim of methamphetamine manufacture and was, thus, not entitled to restitution from the defendant for its cleanup costs because the offense was not committed against the department nor was the department the immediate object of the crime. Similarly, a police agency that purchases illegal drugs in the course of an investigation does not thereby become a direct victim entitled to receive direct restitution reimbursing it for money spent on the drugs. (*People v. Torres, supra*, 59 Cal.App.4th at p. 2.) Also, insurance companies that merely indemnify a direct victim of a crime are not entitled to restitution. (*People v. Saint-Amans, supra*, 131 Cal.App.4th at p. 1085.)

 The holding we extract from these authorities is that RIAA is not a direct victim because it was not the object of defendants' crimes and it cannot claim lost profits or other losses caused by defendants' crimes. The record does not show who are the members of RIAA, what music labels or recording artists were the subject of the counterfeit compact discs,[4] or whether there is any correlation between RIAA's members and the affected artists or labels. There is no evidence that RIAA receives an assignment of rights from its members. Nor is it established that RIAA represents victims who are foreign citizens, like in *Ortiz*, for whom seeking restitution would prove impracticable or impossible. Even if RIAA's members were identified and correlated with the counterfeited products, RIAA's investigator testified that RIAA does not seek restitution for the direct benefit of its members. Instead, RIAA uses any recovery of restitution to offset the costs of its piracy investigations.

---

[4] Only the album, "Life After Death" by the murdered rap artist, Notorious B.I.G., was identified during Kelly's trial.

■ Under these circumstances, the trial court erred by relying on the *Ortiz* court for the proposition that RIAA can "stand in the shoes" of its members, who are not indentified or known, and may obtain restitution when the specific damage to the anonymous members has not been established. Our holding is supported by *People v. Giordano* (2007) 42 Cal.4th 644, 657 [68 Cal.Rptr.3d 51, 170 P.3d 623], in which the California Supreme Court reiterated that restitution is meant to reimburse crime victims for the economic losses they suffer resulting from the crimes for which a defendant was convicted. RIAA, a nonprofit organization, has not suffered any loss. Only those persons or entities whose product was pirated by defendants have suffered losses.

Finally, we recognize that section 1202.4 was amended, adding subdivision (r), effective January 1, 2009, to permit restitution to a "trade association acting on behalf of the owner or lawful producer" of a compact disc: "In addition to any other penalty or fine, the court shall order any person who has been convicted of any violation of Section 653h, 653s, 653u, or 653w to make restitution to any owner or lawful producer, or trade association acting on behalf of the owner or lawful producer, of a phonograph record, disc, wire, tape, film, or other device or article from which sounds or visual images are derived that suffered economic loss resulting from the violation." (§ 1202.4, former subd. (r).)

Trongale's violation of section 350, subdivision (a)(2), is not included in 2008 the amendment to the restitution statute, which applies to sections 653h, 653s, 653u, or 653w. Defendants' crimes occurred in March 2006, before the effective date of section 1202.4, former subdivision (r). But, even if the amendment applied retroactively, the record supplied to this court does not sufficiently establish that RIAA was acting on behalf of the owner or lawful producer of the subject recordings. The compact discs and their owners or producers were not known or identified in the lower court.

The restitution order was made in excess of the trial court's jurisdiction and must be vacated. (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 290 [109 P.2d 942]; *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 462 [20 Cal.Rptr. 321, 369 P.2d 937]; *In re Andres G.* (1998) 64 Cal.App.4th 476, 482 [75 Cal.Rptr.2d 285].)

IV

DISPOSITION

We reverse the restitution order to RIAA.

No additional analysis of the second issue concerning the amount of the order is necessary.

McKinster, Acting P. J., and King, J., concurred.